108 F.3d 339
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Louis Sanchez RUBIO, Petitioner-Appellant,
v.
Gail LEWIS, Respondent-Appellee.
 No. 95-16995.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 16, 1996.
Decided Feb. 10, 1997.
 
 1
 Before: WIGGINS and TROTT, Circuit Judges, and VANCE, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Louis Sanchez Rubio was convicted of robbery on September 14, 1987, in violation of California Penal Code section 211 and was sentenced to state prison for an aggregate term of 25 years: five years for the underlying offense and an additional twenty years as a result of four prior convictions that served as sentence enhancements. He appeals the district court's denial of his habeas corpus petition challenging the 1987 state court sentence. Specifically, Rubio contends that two of the underlying state court convictions that were used to enhance his sentence were constitutionally invalid and that the district court should have held an evidentiary hearing before ruling on the issue. We AFFIRM.
 
 I. STANDARD OF REVIEW
 
 4
 We review the district court's denial of habeas corpus relief de novo. Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994). We review de novo the district court's determination of the voluntariness of a guilty plea, while reviewing for clear error factual findings concerning the prior conviction. Moran v. Godinez, 57 F.3d 690, 698 (9th Cir.1994), cert. denied sub nom, Moran v. McDaniel, 116 S.Ct. 479, 113 L.Ed.2d 407 (1995); United States v. Newman, 912 F.2d 1119, 1123 (9th Cir.1990). However, underlying factual findings made by the state court are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Chacon v. Wood, 36 F.3d 1459, 1465 (9th Cir.1994). The decision to deny an evidentiary hearing is reviewed for abuse of discretion. Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991).
 
 II. BOYKIN CLAIMS
 
 5
 Rubio alleges that his 1974 Kern County conviction and his 1982 San Mateo County conviction--both of which were used to enhance the instant conviction--were constitutionally infirm. According to Rubio, his guilty pleas in both prior convictions were not made knowingly and voluntarily, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In Boykin, the United States Supreme Court held that a knowing and voluntary guilty plea must include an explicit waiver by the criminal defendant of his constitutional rights against self-incrimination, right to trial by jury, and right of confrontation.[1] The Boykin Court went to say that "[w]e cannot presume a waiver of these three important federal rights from a silent record." Id. 395 U.S. at 243, 89 S.Ct. at 1712.
 
 
 6
 In Parke v. Raley, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the United States Supreme Court clarified that Boykin 's presumption of invalidity should not be imported into a collateral review of prior convictions used for sentence enhancement. To do so would "improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." Parke, 506 U.S. at 29, 113 S.Ct. at 523 (citation omitted); see also Marshall v. Longberger, 459 U.S. 422, 437, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983) (plea presumed valid in habeas proceeding when pleading defendant was represented by counsel). The Parke Court noted that since "Boykin colloquies have been required for nearly a quarter-century," "it defies logic [on collateral review] to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights." Parke, 506 U.S. at 30, 113 S.Ct. at 524.
 
 
 7
 In light of the Parke decision, the Ninth Circuit has held that, on collateral review, the petitioner cannot satisfy his burden of proving the constitutional invalidity of his conviction "merely by pointing to a silent or ambiguous record." United States v. Mulloy, 3 F.3d 1337, 1339 (9th Cir.1993). Rather, he must make an "affirmative showing" that overcomes the presumption of regularity that accompanies final judgments of conviction. Id. at 1340. It is against this backdrop that Rubio contends that his 1974 and 1982 pleas were involuntary and unknowing.
 
 
 8
 a. 1974 Plea
 
 
 9
 Rubio's attack on his 1974 conviction rests on a letter his counsel received from a Dr. Theodore Badgley, which stated in part that, "without medical evidence to the contrary I would feel that the subject's memory defect signals insufficient mental capacity to have known and understood what he was doing at the time of the alleged offense in July 1973." ER at 6. Rubio argues that this letter shows that he was not of sound mind when he pled guilty to the crime in May 1974. However, the letter does not support this contention. The quoted statement does not even refer to Rubio's mental state at the time of his plea in 1974. Rather, Dr. Badgley went on to write that "[Rubio] does seem presently able to understand the nature and purpose of the proceedings taken against him and to cooperate in a rational manner with counsel in presenting a defense." Id.
 
 
 10
 Rubio also argues that because he did not know of the letter at the time of his plea, that his plea was not knowing and voluntary. However, the evidence reveals that Rubio knew what rights he would be waiving by pleading guilty and that he waived them voluntarily. A transcript of the 1974 guilty plea proceeding establishes that petitioner received his Boykin colloquy. ER at 109. After listing the constitutional rights that he would be waiving by pleading guilty, the trial court asked Rubio if he understood. Id. Rubio answered that he did. Id. Rubio then agreed to waive his constitutional rights and to plead guilty. Id. In light of these facts, we conclude that the district court was correct in ruling that Rubio has failed to overcome the presumption of regularity that the final judgment of conviction enjoys under Mulloy. See Mulloy, 3 F.3d at 1340.[2]
 
 
 11
 b. 1982 Plea
 
 
 12
 With respect to his 1982 guilty plea, Rubio correctly points out that the transcript of the plea proceeding has been destroyed.[3] Therefore, the record is "silent" as to whether Rubio received his Boykin colloquy. Rubio contends that he has made the "affirmative showing" required under Mulloy by affirmatively alleging in a state court challenge of his prior convictions "that at the time of his prior convictions, he did not know of or did not intelligently waive those rights." See Blue Brief at 16 (citing RT 28:11-14). This statement is the extent of what Rubio claims to be the "affirmative showing" required under Mulloy.
 
 
 13
 Those circuits that have considered the issue have all found that a defendant's subsequent declaration that he did not waive his constitutional rights at his prior guilty plea proceeding is, without more, insufficient to overcome the presumption of regularity afforded state convictions. See Cuppett v. Duckworth, 8 F.3d 1132, 1139 (7th Cir.1993) (en banc), cert. denied, 510 U.S. 1180, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994) ("[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions."); see also Snyder v. Grayson, 872 F.Supp. 416, 420 (E.D.Mich.1994), aff'd 57 F.3d 1070 (6th Cir.1995), cert. denied, 116 S.Ct. 234, 133 L.Ed.2d 162 (1995) (self-serving habeas affidavit not sufficient to establish constitutional violation). We agree. As the Seventh Circuit explained in Cuppett, allowing a defendant to overcome the presumption of regularity through his own statements would "create judicial chaos," by rendering all underlying criminal convictions void until the government could prove otherwise. Cuppett, 8 F.3d at 1140.
 
 
 14
 Furthermore, the Supreme Court in Parke appeared to contemplate a more difficult burden of production on the defendant than a simple declaration. In response to arguments from the defendant that it would be difficult to prove the invalidity of a conviction entered many years before, since records and witnesses would be unavailable, the Court stated that "[w]e have little doubt that serious practical difficulties will confront any party assigned an evidentiary burden in such circumstances," but concluded that the Due Process Clause would not be violated by placing the burden on defendants. Parke, 506 U.S. at 31-32, 113 S.Ct. at 524. The Parke Court would have scarcely spoken of "serious practical difficulties" if all the defendant had to do is supply an affidavit asserting that he did not waive his Boykin rights. Thus, we find that Rubio's declaration that he did not waive his Boykin rights does not rise to the level of an "affirmative showing" as required by Mulloy.
 
 
 15
 In any event, there is ample evidence in the record rebutting Rubio's assertion. First, there is a transcript of the preliminary hearing in the 1982 case, in which the robbery victim related Rubio's alleged crime and identified him as the perpetrator. SER at 2-18. This undermines Rubio's statement that he had no notice of the nature of the 1982 crime.
 
 
 16
 Moreover, there is a docket sheet for the 1982 plea proceeding in which Rubio agreed that (1) he understood the nature of the charges against him; (2) he had discussed the nature of the charges with his attorney; (3) his attorney had explained his constitutional right to a trial by jury, his right to confront witnesses, and his right against self-incrimination; (4) he realized that he was giving up those rights by pleading nolo contendere or guilty; and (5) that he was doing so freely and voluntarily. ER at 16. He signed the form and dated it July 15, 1982. Id.
 
 
 17
 Finally, this was not Rubio's first time in the criminal justice system. The Supreme Court has said that a defendant's prior experience in the criminal justice system is relevant to the question of whether he knowingly waived his constitutional rights. See Parke, 506 U.S. at 37, 113 S.Ct. at 527. For the foregoing reasons, we are satisfied that Rubio's 1982 guilty plea satisfied due process.
 
 III. INEFFECTIVE ASSISTANCE OF COUNSEL
 
 18
 Rubio claims that he was denied effective assistance of counsel in his 1974 conviction. To establish a claim for ineffective assistance of counsel, Rubio must show (1) that the attorney's errors or omissions reflected a failure to exercise the skill, judgment or diligence of a reasonably competent attorney, and (2) that he suffered prejudice such that a reasonable probability exists that but for the counsel's errors, the results of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 688-89, 694, 104 S.Ct. 2052, 2064-65, 2068, 80 L.Ed.2d 674 (1984). Because of the difficulties inherent in evaluating counsel's performance, defendants must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066.
 
 
 19
 Here, Rubio claims that his counsel provided ineffective assistance in connection with his 1974 guilty plea, because he persuaded Rubio to drop his insanity defense. This, according to Rubio, was a mistake in light of the letter from Dr. Badgley, which he asserts declares Rubio to be insane. A closer examination of the letter, however, reveals that Dr. Badgley made no such diagnosis. Instead, he found that Rubio suffered from no functional disorder, psychosis, neurosis, or specific personality disorder. ER at 6. He did find a possible organic brain syndrome, but one that was associated with Rubio's epilepsy. Id. He bases the possibility that "subject's memory defect signals insufficient mental capacity to have known and understood what he was doing at the time of the alleged offense in July 1973," on the fact that Rubio said he could not remember what occurred at the time of the alleged robbery in question. Id. Dr. Badgley merely concluded that it would be "inappropriate" to rule out the possibility that Rubio could not remember the incident without "exhaustive medical examination." Id. Dr. Badgley also noted that Rubio's memory, both recent and remote, was intact except for the two occasions in which he allegedly committed criminal acts. Id.
 
 
 20
 Rubio alleges that his counsel persuaded him to change his plea to guilty and did not inform him of the letter. However, it cannot be said that this action was unreasonable. An attorney could have reasonably believed that it would be difficult to convince a jury that a defendant's memory was perfectly intact except for those memories surrounding his acts of criminal behavior. Further, the district court noted that Rubio's attorney made it a part of the plea bargain that Rubio would receive a 90-day diagnostic exam prior to his sentencing. See ER at 109 & 119 (citing Gov't Response Ex. D at 7). This suggests that Rubio's counsel made a tactical decision to use his possible mental problems as a bargaining chip in the plea negotiations. This court has previously held that a tactical decision with which defendant disagrees cannot be grounds for an ineffective assistance claim. See People of Territory of Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1984).
 
 
 21
 In any event, even if Rubio were successful in satisfying the reasonableness prong of the Strickland test, he fails to show that he was prejudiced. In cases involving an attack on the validity of a guilty plea, a claim of ineffective assistance of counsel may be sustained only when the petitioner establishes that the ineffective performance "affected the outcome of the plea process ... [such] that absent the erroneous advice, he would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Rubio fails to articulate how a reasonable possibility exists that he would have gone to trial had he known of the existence of this letter. Given the equivocal nature of the letter, we find that it is highly doubtful that Rubio's knowledge of this letter would have changed his plea. Accordingly, Rubio also fails to satisfy the prejudice prong of the Strickland test.
 
 IV. EVIDENTIARY HEARING
 
 22
 Finally, Rubio contends that the district court erred in denying his habeas petition without an evidentiary hearing. Rubio argues that the federal district court erred in not following the California Supreme Court case of People v. Sumstine, 36 Cal.3d 909, 206 CalRptr. 707, 687 P.2d 904, (Cal.1984), which requires state courts to hold an evidentiary hearing once the defendant has affirmatively alleged that at the time of his prior conviction he did not know of, or did not intelligently waive, the constitutional rights protected under Boykin. See Sumstine, 36 Cal.3d at 914, 687 P.2d at 906. However, the federal district court was not bound by Sumstine.
 
 
 23
 Under federal law, a habeas corpus petitioner is entitled to an evidentiary hearing only "if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court." Greyson, 937 F.2d at 1412 (quoting Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989). Moreover, when the record conclusively shows that petitioner is not entitled to habeas relief, an evidentiary hearing is not required. See Anderson v. United States, 898 F.2d 751, 753 (9th Cir.1990) (Section 2241 petition); Spikes v. United States, 633 F.2d 144, 145 (9th Cir.1980) (a motion for relief under Section 2255 that alleges facts supporting a claim for relief may be denied without a hearing if the motion, the records, and the files of the case conclusively show that the prisoner is entitled to no relief). In the instant case, it was not an abuse of discretion for the district court to dismiss the case without holding an evidentiary hearing because the record conclusively shows that Rubio failed to meet his burden under Parke v. Raley, supra, and United States v. Mulloy, supra, concerning Rubio's challenge to the constitutionality of the enhancements for his 1974 and 1982 priors, and because the record conclusively shows that Rubio failed to meet his burden of showing that he received ineffective assistance of counsel with regard to his 1974 conviction. Rubio was therefore not entitled to a hearing.
 
 
 24
 For the foregoing reasons, the district court's denial of habeas corpus relief is AFFIRMED.
 
 
 
 *
 The Honorable Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Court in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), had already required that criminal defendants knowingly and voluntarily waive their right to counsel in order to effectuate a valid guilty plea
 
 
 [2]
 Rubio's primary argument regarding the 1974 conviction is that he received inadequate assistance of counsel on the grounds that his attorney withdrew his insanity defense and persuaded him to plead guilty. That issue will be considered infra
 
 
 [3]
 There is no nefarious reason for the transcript's destruction; the State of California merely destroys the transcribing notes after five years